# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS,**

        Plaintiff,

    vs.                           No. **CIV 05-487 MCA/LFG**

**LESLIE AND JACK MILLER**,
as parents and next friends of **S.M.**,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on Plaintiff *Albuquerque Public Schools Application for Preliminary Injunction* [Doc. No. 1] filed on April 29, 2005; *Albuquerque Public Schools Request for an Evidentiary Hearing on its Application for Preliminary Injunction* [Doc. No. 2] filed on May 3, 2005; *Albuquerque Public Schools Request for an Evidentiary Hearing on Its Application for Preliminary Injunction* [Doc. No. 5] filed on May 9, 2005; and Defendants Leslie and Jack Miller's *Motion to Dismiss for Lack of Subject-Matter and Personal Jurisdiction and for Failure to State a Claim Upon Which Relief May Be Granted* [Doc. No. 9] filed on June 2, 2005.  The Court held telephonic status conferences with counsel regarding this matter on May 9, 2005, and on July 12, 2005, at which time the Court directed the parties to provide additional documents from the

Administrative Record.  [Doc. No. 4, 13.]  Having considered the parties' submissions, the relevant law, the arguments and evidence presented by counsel, and being otherwise fully advised in the premises, the Court denies Plaintiff's motions and grants Defendants' motion for the reasons stated below.

## I.   FINDINGS OF FACT AND PROCEDURAL BACKGROUND

1.   Defendants Leslie and Jack Miller (the Millers) are the parents of S.M., a student for whom Plaintiff Albuquerque Public Schools (APS) is obligated to provide a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.[1]

2.   Based on a contention that APS was not providing their child with an FAPE, the Millers requested and received a due process hearing under Section 1415(f) of the IDEA, 20 U.S.C. § 1415(f), and the parallel provisions of state law.

3.   At issue in the due process hearing was whether APS provided the Millers' child with appropriate reading instruction during the sixth, seventh, and eighth grades of the child's education, and whether APS should be required to reimburse the Millers for private tutoring services that they purchased for the child during a portion of this period.

4.   Also at issue in the due process hearing was whether APS should be required to utilize the Millers' preferred method of reading instruction, known as Academic Language

---

[1]The IDEA was amended in 2004, and these amendments became effective on July 1, 2005. See Pub. L. No. 108-446, 118 Stat. 2715 (2004).  However, all references to the IDEA in this *Memorandum Opinion and Order* concern the version of the statute in effect before July 1, 2005.

Therapy or "ALT," or whether APS may instead utilize an alternative methodology, known as Wilson reading.

5.     The Due Process Hearing Officer (DPHO) issued a decision concluding that the Millers were not entitled to reimbursement for the private tutoring services they purchased for their child during the child's seventh-grade year but that APS was obligated to reimburse the Millers for such services during a portion of the child's eighth-grade year and to provide Wilson reading instruction for the remainder of the child's eighth-grade year.

6.     Pursuant to Section 1415(g) of the IDEA, 20 U.S.C. § 1415(g) and the parallel provisions of state law, both the Millers and APS appealed different portions of the DPHO's decision to an Administrative Appeal Officer (AAO).

7.     The AAO reversed the DPHO's decision as to whether the Millers' child was denied an FAPE during the seventh grade and as to whether the child was entitled to continue with, and be reimbursed for, ALT reading instruction for the remainder of his eighth-grade school year and through the summer until the beginning of the ninth-grade school year in August.

8.     The AAO's decision specifically acknowledged that APS is not necessarily required to provide ALT reading instruction after the summer following the child's eighth-grade school year, but nevertheless concluded that "*as an equitable matter*, Parents should be granted their request for continued payment of Student's ALT therapist as *necessary to compensate for the denial of FAPE to Student*."  (Emphasis added.)

9.     Thus, the AAO "holds that allowing Student to continue to work with the ALT therapist for the remainder of this school year and during the summer, *is an appropriate remedy*, given Student's close relationship with his ALT therapist and *given the deprivation of FAPE in 7th and 8th grades* found by the [AAO]."  (Emphasis added.)

10.     These provisions of the AAO's decision make clear that the reimbursement for continued ALT reading instruction was not based on the premise that the Millers are allowed to unilaterally override APS's choice of educational methodology in all instances; rather, this decision was based on the premise that such reimbursement and continuation of the ALT method of instruction were appropriate as an equitable remedy to compensate the Millers for the denial of an FAPE during the preceding school years.

11.     On April 27, 2005, APS filed its *Application for Preliminary Injunction* [Doc. No. 1] in the United States District Court for the District of New Mexico, claiming that the AAO erred in requiring APS to temporarily abide by the Millers' preference for the ALT reading methodology in lieu of, or in addition to, Wilson reading, and that APS would suffer irreparable harm if the Court did not enjoin the portion of the AAO's decision requiring APS to reimburse the Millers for the ALT instruction provided through the summer following the child's eighth-grade school year.

12.     Despite the fact that the Millers had not yet been served nor had a summons been issued, APS also filed two *Requests for an Evidentiary Hearing on its Application for Preliminary Injunction* [Doc. No. 2, 5] on May 3, 2005, and May 9, 2005.

13.     The Court held a telephonic status conference with counsel on May 9, 2005, at which time counsel for the Millers advised the Court that the Millers had not yet been served and would be contesting subject-matter and personal jurisdiction with respect to APS's *Application for Preliminary Injunction*.  [Doc. No. 4.]

14.     Counsel for the Millers also advised the Court that the Millers filed a civil action pursuant Section 1415(i)(2) of the IDEA, 20 U.S.C. § 1415(i)(2), regarding the same AAO decision at issue in APS' *Application for Preliminary Injunction*.  See Miller v. APS, No. 05cv502 JP/WPL (D.N.M. filed May 4, 2005).

15.     At the telephonic status conference on May 9, 2005, the Court advised counsel that a hearing would not be set until the Millers were served and had the opportunity to file a response.  [Doc. No. 4.]

16.     The Millers were respectively served with APS's *Application for Preliminary Injunction* on May 17, 2005, and May 18, 2005.  [Doc. No. 6, 7.]

17.     On June 2, 2005, the Millers filed their *Motion to Dismiss* [Doc. No. 9] on grounds of lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief may be granted.

18.     APS did not file a response to the Millers' *Motion to Dismiss* within the fourteen-day period provided in D.N.M. LR-Civ. 7.6(a), but instead filed a *Reply in Support of Its Application for Preliminary Injunction* [Doc. No. 11] more than thirty days later on July 5, 2005.

19.     The day after filing its *Reply*, counsel for APS sent a letter to the Court reiterating their request for a hearing; accordingly, the Court held another status conference with the parties on July 12, 2005.  [Doc. No. 12, 13.]

20.     At the status conference, the Court heard arguments from counsel regarding the need for an evidentiary hearing, and counsel for APS attempted to raise an additional issue regarding the prospective relief awarded by the AAO.  [Doc. No. 13.]

21.     At the status conference, the Court also queried counsel about the production of the administrative record, and the parties agreed to provide the Court with complete copies of the AAO's decision and the DPHO's decision.

22.     On July 20, 2005, the Millers filed their reply brief regarding their *Motion to Dismiss* and notified the Court that briefing was completed on this motion.  [Doc. No. 14, 15.]

## II.     <u>LEGAL ANALYSIS AND CONCLUSIONS OF LAW</u>

Both parties have been afforded the opportunity to present documentary evidence and brief the issues raised by APS's motion.  Accordingly, the procedural requirements for issuing a temporary restraining order under Fed. R. Civ. P. 65(b) do not apply in this case. Instead, the Court focuses its inquiry on whether there are grounds for issuing a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).

In the absence of a specific statute that "clearly provides otherwise," the Court evaluates a motion for a preliminary injunction according to traditional equitable principles. <u>United States v. Oakland Cannabis Buyers' Cooperative</u>, 532 U.S. 483, 496 (2001).  These

equitable principles, however, do not provide the Court with the authority "to override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." Id. at 497.  Thus, when the enforcement of a statutory mandate is at issue, the Court only applies equitable principles in the context of considering the advantages and disadvantages of employing the extraordinary remedy of a preliminary injunction over other available methods of enforcing the statute.  See id. at 497-98.

In order to show that the extraordinary remedy of a preliminary injunction is preferable to other methods of enforcement, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."  Northern Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984) (citing Hillsborough v. Cromwell, 326 U.S. 620, 622 (1946)); accord Sweeten v. Sneddon, 463 F.2d 713, 715 (10th Cir. 1972); Robbins v. Budke, 739 F. Supp. 1479, 1484 (D.N.M. 1990).  In order to establish grounds for preliminary injunctive relief, a movant also must show that it will suffer irreparable injury unless the injunction issues; that the threatened injury to the movant outweighs the harm the injunction may cause to others; that the injunction, if issued, would not be adverse to the public interest; and that there is a substantial likelihood that the movant will succeed on the merits.  See Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1346-47 (10th Cir. 1997); 13 James Wm. Moore, Moore's Federal Practice § 65.22[1][a], at 65-41 to 65-42 (3d ed. 2003).  The burden is on the movant to show that these equitable factors weigh in its favor, see Automated Mktg. Sys, Inc. v. Martin, 467 F.2d 1181, 1183

(10th Cir. 1972), and such a showing must be "clear and unequivocal," SCFC ILC, Inc. v. VISA USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991).

The meaning and effect of the portion of the AAO's decision that APS seeks to enjoin in this case is governed by the IDEA, which provides a comprehensive statutory scheme for addressing the type of dispute at issue here.  In particular, Section 1415(i)(2) of the IDEA governs the right to bring a civil action challenging an administrative decision issued under this statute.  See 20 U.S.C. § 1415(i)(2).  The IDEA also sets forth the standard of review applicable to such civil actions, see 20 U.S.C. § 1415(i)(2)(B), and contains a "stay put" provision which controls the manner in which an educational placement may be changed while proceedings under this statute are pending, see 20 U.S.C. § 1415(j).

The IDEA's "stay put" provision states, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement."  Id.   The law is clear that an administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents the child's current education placement for purposes of the IDEA's "stay put" provision.  See  34 C.F.R. § 300.514(c) (2004); Sch. Comm. of Town of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 373 (1985); Bd. of Educ. v. Schutz, 290 F.3d 476, 482-84 (2d Cir. 2002); Georgia State Dep't of Educ. v. Derrick C., 314 F.3d 545, 552 (11th Cir. 2002); Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83-84 (3d Cir. 1996); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990); Bd. of Educ. of

Pine Plains Cent. Sch. Dist. v. Engwiller, 170 F. Supp.2d 410, 413-14 (S.D.N.Y. 2002). These authorities also support the conclusion that the reimbursement ordered by the AAO in this case constitutes part of the "current educational placement" for purposes of the IDEA's "stay put" provision, and that APS may not postpone its duty to reimburse the Millers based on the fact that the litigation is still pending.

In light of these authorities, I view this case as presenting a legal question that is answered by the application of the IDEA's "stay put" provision and its implementing regulations. Because Congress has clearly spoken on the issue, this case is not one in which a court may, under the guise of traditional equitable principles, "override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." Oakland Cannabis Buyers' Cooperative, 532 U.S. at 496. Under the comprehensive statutory scheme that Congress enacted to provide free appropriate public education to individuals with disabilities, APS is presently required to reimburse the Millers in accordance with the AAO's decision and may not avoid that result by invoking the Court's traditional equitable jurisdiction in the manner contemplated here.

To the extent that traditional equitable principles are relevant here, APS has not demonstrated that the AAO's application of these principles was erroneous or that they weigh in favor of granting the preliminary injunctive relief APS requests in this proceeding. The IDEA provides that when a court is asked to review a decision resulting from an administrative appeal, the court "shall receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

Under this standard, the dispute over whether it is APS's prerogative to choose Wilson reading over ALT as the preferred methodology for instructing the Miller's child does not occur in a vacuum.  Rather, this dispute must be resolved in the context of the lengthy administrative record that resulted in the AAO's decision.  APS has produced only a small portion of this administrative record in support of its motion.  Indeed, complete copies of the AAO's decision itself and that of the DPHO were not produced until the Court requested them at the status conference on July 12, 2005.

Based on my review of this limited record, the portion of the AAO's decision which APS is challenging in this action appears to fall well within the AAO's authority to award equitable relief to remedy past violations of the IDEA.  While in other contexts APS may retain greater authority to choose the relevant educational methodology for its students, it has not shown a substantial likelihood of prevailing on the merits in the specific context of this case, where the choice of methodology forms part of the equitable relief designed to compensate the Millers for the harm they suffered as a result of the denial of an FAPE in past school years.

APS argues that it will suffer irreparable harm because if it reimburses the Millers now, it probably will never be able to get the money back from the Millers if it were to prevail on this issue at a later date.  In balancing the equities, however, courts addressing similar issues have concluded that "[t]his injury is de minimis compared to the harm of a

child not receiving the appropriate education to which he or she is entitled." <u>W. Platte R-II Sch. Dist. v. Wilson</u>, No. 04-6040-CV-SJ-ODS, 2004 U.S. Dist. Lexis 16889, at *7 (W.D. Mo. July 20, 2004); <u>see also</u> <u>Engwiller</u>, 170 F. Supp. 2d at 414 (concluding that a school district was required to pay the student's tuition until the end of the appeals process, and "[t]he fact that the District fears that the Engwillers will be unable to repay the sums so expended does not change this result").

I agree with these authorities and conclude that whatever threat of irreparable financial harm APS may suffer as a result of its present obligation to reimburse the Millers is outweighed by the much greater and more irreparable threat of harm to the child, who benefits from the relief awarded by the AAO's decision.  I further conclude that in light of the specific policy choices that Congress made when it enacted the procedural safeguards in the IDEA, the public interest weighs in favor of denying APS's application for preliminary injunction.  In related contexts, courts have observed that:

> While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position.  The purpose of the Act, which is to ensure that every child receive a "free and appropriate education" is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education. . . .  Without interim financial support, a parent's "choice" to have his child remain in what the state has determined to be an appropriate private school placement amounts to no choice at all.   The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset.

<u>Raelee S.</u>, 96 F.3d at 86-87.

Finally, to the extent this matter is to be treated as a civil action, I note that the relief requested in APS's pleading is limited to a preliminary injunction.  APS appears to concede (at least for purposes of this proceeding) that the matter is moot if the preliminary injunctive relief it now requests is denied.  To the extent that the parties wish to litigate other aspects of the AAO's decision, there is a separate pending civil action in which they may do so. Accordingly, I conclude that with the denial of APS's *Application for Preliminary Injunction*, there is no remaining case or controversy under Article III of the United States Constitution, and this matter must be dismissed without prejudice for lack of jurisdiction.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's *Application for Preliminary Injunction* [Doc. No. 1] and related motions are denied, Defendants' *Motion to Dismiss* [Doc. No. 9] is granted, and this action is dismissed without prejudice for lack of jurisdiction.

**IT IS THEREFORE ORDERED** that Plaintiff *Albuquerque Public Schools Application for Preliminary Injunction* [Doc. No. 1] filed on April 29, 2005, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff *Albuquerque Public Schools Request for an Evidentiary Hearing on its Application for Preliminary Injunction* [Doc. No. 2] filed on May 3, 2005, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff *Albuquerque Public Schools Request for an Evidentiary Hearing on Its Application for Preliminary Injunction* [Doc. No. 5] filed on May 9, 2005, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants Leslie and Jack Miller's *Motion to Dismiss for Lack of Subject-Matter and Personal Jurisdiction and for Failure to State a Claim Upon Which Relief May Be Granted* [Doc. No. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**SO ORDERED,** this 22nd day of July, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge